IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASHLEY McMASTER, individually and on Behalf of all similarly-situated employees,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>EASTERN ARMORED SERVICES, INC.,<br><br>　　　　Defendant. | Docket No.: 3:11-CV-05100-JAP-TJB<br><br>Civil Action<br><br>(Electronically Filed)<br><br>**Motion Returnable September 4, 2012** |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Norman J. Peer, Esq.
Lomurro Davison Eastman and Munoz
Monmouth Executive Center
100 Willow Brook Road, Ste. 100
Freehold, New Jersey 07728
732.462.7170/732.462.8955 (Fax)

James J. Cusack, Esq.
Florida Bar No. 236853
Admitted Pro Hac Vice
*Counsel for Defendant Eastern Armored Services, Inc.*
James J. Cusack, P.A.
201 N. Franklin St., Ste. 2880
Tampa, Florida 33602
813.223.1276/813.226.0159 (Fax).

James Cusack, Esq.
Norman J. Peer, Esq.,
*Of Counsel and On the Brief*

**TABLE OF CONTENTS**

Table of Authorities ................................................... 3

Introduction ......................................................... 5

I. Facts ............................................................ 5

    A. Defendant Eastern Armored's Business and Plaintiff's Position. .... 5

    B. Plaintiff was subject to being assigned any route at any time ....... 6

    C. Plaintiff was subject to assignment to any vehicle in Eastern Armored's fleet ................................................ 6

    D. Plaintiff regularly worked on vans that exceeded 10,000 pounds .... 7

    E. Plaintiff regularly traveled outside New Jersey in performing her duties. .......................................................... 7

    F. Plaintiff was paid an hourly rate for all hours she worked. .......... 7

II. Argument and Authorities ........................................ 8

    A. Summary Judgment Standard ................................. 8

    B. Plaintiff presented no issues of material fact to establish that Defendant Eastern Armored violated the Fair Labor Standards Act by failing to pay her overtime, as Plaintiff is an exempt employee under the Motor Carrier Act exemption. ................................. 8

        1. Defendant Eastern Armored is a motor carrier under the Motor Carrier Act and the FLSA. ................................... 9

        2. Plaintiff is an exempt employee under the Motor Carrier Act Exemption. .................................................. 10

            a. Plaintiff's duties affected the safety of operations of motor vehicles. ................................................ 11

            b. Plaintiff's duties affected interstate commerce. ............. 12

            c. Plaintiff's operation of motor vehicles over and under 10,000 pounds does not remove her from the Motor Carrier Act exemption. ............................................. 12

CONCLUSION ...................................................... 17

## **TABLE OF AUTHORITIES**

Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . .   8

Avery v. Chariots for Hire, 748 F.Supp.2d 492 (D. Md. 2010). . . . . . . . . . . . .   13, 14, 16, 17

Baez v. Wells Fargo Armored Service Corp., 938 F.2d, 180, 182, 30 WH Cases (BNA) 778, 779 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9, 11

Buckner v. United Parcel Service, Inc. 2012 WL 1596726 (E.D. N.C. 2012)   15-16

Collins v. Heritage Wine Cellars, Ltd., 589 F.3d 895 (7th Cir. 2009) . . . . . . .   14, 15, 17

Dalton v. Sabo, 2010 WL 1325613 (D. Ore. 2010). . . . . . . . . . . . . . . . . . . . .   10, 13, 15

Glanville v. Dupar, 2009 WL 3255292 (S.D. Tex. 2009). . . . . . . . . . . . . . . . .   10, 11

Hernandez v. Brink's, Inc., 2009 WL 113406 (S.D. Fla. 2009) . . . . . . . . . . . .   9, 10, 11, 14, 15

Hernandez v. Alpine Logistics, Inc., 2011 WL 3800031 (W.D. N.Y. 2011). .   16

McBeth v. Gabrielli Truck Sales, Ltd., 768 F.Supp.2d 383, 387 (E.D. N.Y. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8, 9, 11

Mayan v. Rydbom, 2009 U.S. Dist. LEXIS 90525 (E.D. Pa. 2009) . . . . . . . . .   16

Opelika Royal Crown Bottling Co. v. Goldberg, 299 F.2d 37 (5th Cir. 1971). .   9, 11-12

Statutes and Rules

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

49 U.S.C. 13102(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

49 U.S.C. 13102(14) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

49 U.S.C. 31132(19) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

29 C.F.R. Sec. 782.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10-11

29 C.F.R. Sec. 782.2(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 13

29 C.F.R. Sec. 782.3(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. Sec. 782.3(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## INTRODUCTION

Plaintiff Ashley McMaster ("Plaintiff") alleges that Defendant Eastern Armored Services, Inc. ("Eastern Armored") violated the overtime provisions of the Fair Labor Standards Act by failing to pay her overtime. Defendant Eastern Armored is a motor carrier under the Motor Carriers Exemption to the Fair Labor Standards Act, and Plaintiff was an exempt employee under the Motor Carriers Act because she performed duties that affected highway safety and was involved in the interstate transportation of goods. Plaintiff has failed to state any genuine issues of material fact entitling her to prevail on her claim. Thus, Eastern Armored is entitled to judgment as a matter of law.

## I. FACTS

### A. Defendant Eastern Armored's Business and Plaintiff's Position

Defendant Eastern Armored is a pickup and delivery service using secured armored vehicles (Statement of Facts, No. 1). Plaintiff worked for Eastern Armored from March 2010 through April 2011 as a driver or helper on Eastern Armored's armored vehicles (Statement of Facts, Nos. 2, 4, 5). In both capacities, she was engaged in the pick-up and delivery of coins, currency and other items of value (Statement of Facts, No. 7). She typically drove to customer locations such as schools, produce markets, and other commercial establishments, picked up money (cash and checks), and delivered it to banks (Statement of Facts, Nos. 12, 13). She did not perform any duties at Eastern Armored that did not involve working on a vehicle (Statement of Facts, No. 36, 37, 38).

**B. Plaintiff was subject to being assigned any route at any time.**

Plaintiff had no assigned route on any particular day; her assignment varied from day to day (Statement of Facts, No. 19). She could be assigned to any route at any time (Statement of Facts, No. 20). The routes to which Plaintiff and other employees were assigned each day, and the vehicles to be used on those routes, were determined by Eastern Armored management (Statement of Facts, No. 15). Relatedly, Plaintiff's assignment as a driver or helper was determined by Eastern Armored's dispatcher or operations staff (Statement of Facts, No. 3). Plaintiff learned of her assigned route and vehicle each day when she reported to work (Statement of Facts, No. 16). Employees' assignments, including the route and the truck designated for it, were written on a board in the office (Statement of Facts, No. 17). Eastern Armored's other drivers and guards were randomly assigned routes in the same manner as Plaintiff (Statement of Facts, No. 18). The routes to which Plaintiff was assigned, including the locations of the stops she made, and the vehicles she drove on those routes, are recorded on Eastern Armored's route sheets (Statement of Facts, No. 23).

**C. Plaintiff was subject to assignment to any vehicle in Eastern Armored's fleet.**

The type of vehicle Plaintiff drove at Eastern Armored varied every day (Statement of Facts, No. 21). Plaintiff was expected to drive any vehicle in the fleet in performing her duties at any time (Statement of Facts, No. 22). Eastern Armored's fleet includes Ford Explorers, vans, and Hondas, and Plaintiff drove each of these vehicles (Statement of Facts, Nos. 25, 26, 28, 30, 31).

**D. Plaintiff regularly worked on vans that exceeded 10,000 pounds.**

The vans weigh in excess of 10,000 pounds (Statement of Facts, No. 32). Plaintiff does not know the percentage of time she spent working on larger vehicles versus smaller vehicles (Statement of Facts, No. 28, 33). However, the run sheets that she identified at her deposition (Statement of Facts, No. 23; Deposition Exhibit D-1) indicate that she spent at least half of time on vehicles exceeding 10,000 pounds (Statement of Facts, No. She does not recall refusing to be assigned to a larger vehicle (Statement of Facts, No. 27). She does not know if any employees worked exclusively on larger vehicles or smaller vehicles (Statement of Facts, No. 29). Plaintiff was not familiar with the weights of the vehicles she drove, but was familiar with the vehicle registration forms (Statement of Facts, Nos. 34, 35).

**E. Plaintiff regularly traveled outside New Jersey in performing her duties.**

Plaintiff regularly traveled outside the State of New Jersey in performing her duties, including travel to Pennsylvania (Statement of Facts, Nos. 8, 9, 10). When Plaintiff was hired, she never put any limitation on crossing state lines (Statement of Facts, No. 11).

**F. Plaintiff was paid an hourly rate for all hours she worked.**

Plaintiff was paid an hourly rate, and she received her regular hourly rate for any hours she worked in excess of 40 hours in any workweek (Statement of Facts, Nos. 40, 41, 44). Her timesheets would reflect how many workweeks she worked over 40 hours (Statement of Facts, No. 43). Plaintiff interacted with other driver guards, who were also

paid on an hourly basis and received their regular hourly rate for hours worked in excess of 40 hours in any given workweek (Statement of Facts, Nos. 45).

## II. ARGUMENT AND AUTHORITIES

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) sets forth the summary judgment standard and states that summary judgment shall be granted only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." A material, disputed fact is one that might "affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

### B. Plaintiff presented no issues of material fact to establish that Eastern Armored violated the Fair Labor Standards Act by failing to pay her overtime, as Plaintiff is an exempt employee under the Motor Carrier Act.

As background:

> The Motor Carrier Act ("MCA"), passed prior to the FLSA, was enacted to promote efficiency and safety in the motor transport industry. The MCA provides for federal regulatory authority with respect to "qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation. 49 U.S.C. Sec. 31502(b)(2). To avoid overlapping rules, the FLSA contains an exemption for those employees whose hours are regulated by the MCA. See 29 U.S.C. Sec. 213(b)(1). That exemption provides that FLSA overtime provisions do not apply with respect to "(1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. Sec. 213(b)(1).

McBeth v. Gabrielli Truck Sales, Ltd., 768 F.Supp.2d 383, 390 (E.D. N.Y. 2010).

### 1. Defendant Eastern Armored is a motor carrier under the Motor Carrier Act and the FLSA.

The initial inquiry in determining the applicability of the Motor Carrier Act is an obvious one – whether the employer in question is a motor carrier – making such employer subject to the jurisdiction of the Department of Transportation, as opposed the Department of Labor. Baez v. Wells Fargo Armored Service Corp., 938 F.2d 180, 182 (11th Cir. 1991). "The Secretary [of Transportation] has the power to establish qualifications and maximum hours of service for employees who . . . are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act." Id. at 181-82. Clearly, Eastern Armored qualifies as a motor carrier, as it operates armored vehicles transporting valuables in interstate commerce. Several courts have found that armored car companies like Eastern Armored are motor carriers. See, e.g., Hernandez v. Brink's, Inc., 2009 WL 113406 (S.D. Fla. 2009); Baez v. Wells Fargo., 938 F.2d at 182 (quoting Opelika Royal Crown Bottling Co. v. Goldberg, 299 F.2d 37 (5th Cir. 1971)). "When determining whether the motor carrier exemption applies, this issue is not whether the federal agency has exercised its authority, but whether it has the power to do so." McBeth, 768 F.Supp.2d at 390. E.g., Baez, 938 F.2d at 181, n. 2.

Notably, in 2005, "the definition of a motor carrier for purposes of the FLSA's motor carrier exemption was amended by the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU")" Hernandez, 2009 WL 113406, at *2. SAFETEA-LU defined a "motor carrier" as "a person providing commercial motor vehicle . . . transportation for commerce." 49 U.S.C. Sec. 13102(14), cited in Hernandez, 2009 WL 113406, at *4. Relatedly, the amendment defined

9

"commercial motor vehicles," as "a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle has a gross vehicle rating or gross weight of at least 10,001 pounds, whichever is greater." Hernandez, 2009 WL 113406 at *4 (quoting 49 U.S.C. Sec. 31132(19)). Simply, during the fairly brief window in which the SAFETEA-LU definition of "motor carrier" was applicable, "the Secretary of Transportation had jurisdiction over a person transporting property in interstate commerce if the transporting vehicle . . . [weighed] at least 10,001 pounds." Hernandez, 2009 WL 113406, at *4.

That window closed in June, 2008, when Congress passed the SAFETEA-LU Technical Correction Act of 2008 ("TCA"). Dalton v. Sabo, 2010 WL 1325613, at *5 (D. Ore. 2010). The TCA restored the previous definition of "motor carrier" to the definition that existed prior to SAFETEA-LU; thus, the weight of the vehicle was once again irrelevant in determining whether an employer is a motor carrier. Id.; Glanville v. Dupar, 2009 WL 3255292, at *4 (S.D. Tex. 2009).

In this case, the evidence is undisputed that Defendant Eastern Armored is a pick-up and delivery service of currency, checks and valuables transported in armored vehicles. Eastern Armored's fleet includes vehicles over and under 10,000 pounds. Eastern Armored is clearly a motor carrier within the meaning of the Motor Carrier Act and the FLSA.

**2. Plaintiff is an exempt employee under the Motor Carrier Act Exemption.**

After establishing "the class to which the employer belongs," the next inquiry in considering the applicability of the Motor Carrier Act exemption is "the class of work

10

involved in the employee's job." 29 C.F.R. Sec. 782.2. Specifically, the Court must determine whether the employee in question:

> engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation of the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

Baez, 938 F.2d at 182. Thus, the two issues are whether the employee's duties affect the safety of operations and involve interstate commerce.

### a. Plaintiff's duties affected the safety of operations of motor vehicles.

Plaintiff, as noted above, performed all of her duties on Eastern Armored's vehicles, either as a driver or helper/guard.

> The Department of Labor interprets the motor carrier exemption to apply to drivers, driver's helpers, loaders, or mechanics whose work directly affects the safe operation of vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the MCA. 29 C.F.R. Sec. 782(b)(2)(i)(ii); 29 U.S.C. Sec. 782.5.

McBeth, 768 F. Supp. 2d at 390 (internal case citations omitted). E.g., Glanville, 2009 WL 3255292, at *9 ("a 'driver is an occupation that directly affects the safety of motor vehicles'") (quoting 29 C.F.R. Sec. 782.2(b)(1)). As the regulation sets forth, Plaintiff's job duties not only as a driver but also when acting as a driver's helper both required her to "engage in activities that directly affect the operational safety of motor vehicles in the transport of property in interstate commerce." 29 C.F.R. Sec. 782.2. In Hernandez, 2009 WL 113406, at *4 (citing 29 C.F.R. Sec. 782.3(a) and 782.4(a)), the Court specifically found that the Brink's drivers' helpers, who are exempt under the Motor Carrier Act where they meet the applicable criteria "include armed guards on armored trucks because they directly affect the safety of operation of armored trucks in interstate or foreign commerce." See, e.g., Baez v. Wells Fargo, 938 F.2d, at 182 (quoting Opelika Royal

11

Crown Bottling Co., 299 F.2d 37 (5th Cir. 1971)) ("'guards on armored bank trucks . . . performed services which affect the safety of the vehicle'"). Notably, "'it is the character of activities rather than the proportion of the employee's time or activities' that determines the Secretary's jurisdiction to regulate employees under the MCA and therefore determines whether the MCA exemption of the FLSA applies." Songer v. Dillon Resources Inc., 618 F.2d 467, 473-74 (5th Cir. 2010) (citation omitted).

    b.    **Plaintiff's duties affected interstate commerce.**

The evidence clearly establishes in the instant matter that Plaintiff regularly traveled outside New Jersey in performing her duties, and was always subject to doing so. Whether Plaintiff regularly or rarely crossed state lines, where Eastern Armored indiscriminately distributed the interstate jobs to all employees, this is sufficient to exempt Plaintiff from the FLSA's overtime provisions. As the Court stated in Songer, "if the employee's job duties are 'such that [s]he is (or . . . is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities' . . . [s]he comes within the MCA exemption 'in all workweeks when [s]he is employed at such job.'" Id. at 474, citing 29 C.F.R. Sec. 782.2(b)(3). After all, as the Court observed, "the safety concerns facing a carrier who sent <u>every</u> driver on an interstate trip would be the same if the carrier sent only <u>some or most</u> of its drivers on interstate trips." Id. (citation omitted).

    c.    **Plaintiff's operation of vehicles over and under 10,000 pounds does not remove her from the Motor Carrier Act exemption.**

The final step in determining whether Plaintiff is an exempt employee under the Motor Carrier Act again involves an analysis and interpretation of the provisions of the SAFETEA-LU Technical Corrections Act. The TCA, as noted above, eliminated the

12

10,000 truck weight requirement from the definition of "motor carrier;" however, that 10,000 truck weight requirement maintained relevance for determining the exempt status of motor carrier employees. The TCA retained FLSA overtime protection for covered employees, which it defined as an individual who:

(1)    who is employed by a motor carrier...

(2)    whose work, in whole or in part, is defined

    (a)    as that of a driver, helper, loader, or mechanic; and

    (b)    as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce ... [and]

(3)    who perform duties on motor vehicles weighing 10,000 pounds or less.

Dalton v. Sabo, 2010 WL 1325613, at *3 (quoting 49 U.S.C. Sec. 13102(4)). Thus, motor carrier employees who operate vehicles less than 10,000 pounds are extended FLSA protection and, relatedly, employees operating vehicles in excess of 10,000 pounds are exempt from overtime. See Avery v. Chariots for Hire, 748 F.Supp. 2d 492, 499 (D. Md. 2010);[1] Glanville, 2009 WL 3255292, at *4. The Avery court observed that "[n]either the language of the FLSA nor the motor carrier exemption indicates how to categorize individuals who operate commercial motor vehicles and non-commercial motor vehicles." Id. Avery went on to note that DOL Regulations do not address the mixed fleet issue, but compared that issue to the "somewhat analogous issue of mixed duties involving safety of operation," observing the regulatory provision on that subject provides that "if the bona fide duties of the job performed by the employee are in fact

---

[1] Vehicles that transport more than 8 passengers, more than 15 passengers, or transport hazardous materials are exceptions to the 10,000 pound weight limit.

such that he is called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities . . . he comes within the exemption in all workweeks when he is employed at such job." Id. at 499-500, citing 29 C.F.R. Sec. 782.2(b)(3). Relying on this logic, the Avery court followed the "prevailing view . . . that the motor vehicle exemption should apply so long as the time an employee spends operating commercial vehicles is more than de minimus." Id. at 500. "[W]hen mixed activities occur, the Motor Carrier Act favors coverage of the employee during the course of employment." Id. (quoting Hernandez v. Brink's, 2009 WL 113406, at *6). The Avery court concluded that:

> As the Court of Appeals for the Seventh Circuit aptly explained, '[d]ividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes.

Id. (quoting Collins v. Heritage Wine Cellars, Ltd., 589 F.3d 895, 901 (7th Cir. 2009)). The Avery court found that "even assuming that Plaintiff Avery [who worked both before and after the applicability of the TCA] spent at least some portion of his working time operating [vehicles that bring employees under [FLSA coverage], he is still subject to the motor carrier exemption." Id. at *4.

Other courts have followed the same logic and reached the same results. The court in Hernandez v. Brink's also considered this "analogous issue" in deciding that employees who operate motor vehicles in both weight categories during the SAFETEA-LU applicable time frame, were exempt under the Motor Carrier Act. 2009 WL 113406, at *5-6.

14

Relatedly, in 2010, the court in Dalton v. Sabo also held that even if the plaintiffs therein (who worked both before and after the Technical Correction Act) "occasionally performed duties in vehicles weighing 10,000 pounds or less, 'when mixed activities occur, the Motor Carrier Act favors coverage of the employee during the course of employment.'" Dalton, 2010 WL 1325613, at *4 (quoting Hernandez v Brink's, 2009 WL 113406, at *6). Dalton goes on to cite the applicable FLSA regulation, 29 CFR Sec. 782.2(b)(3) to the effect that the employees at issue were or were likely to be called upon to perform [clearly exempt] work, [they] came within the exemption in all workweeks when employed at such job." Id. The Dalton court therefore concluded that if the plaintiff employees "performed or were expected to perform duties on vehicles weighing in excess of 10,000 pounds . . . the [Motor Carrier Act] exemption applies." Id. In the instant matter, as in Dalton, [Defendant] presented uncontested evidence that . . . [its] drivers were expected to drive any . . . vehicle at any time. Thus, their duties affected safety of operations within the meaning of the Motor Carrier Act exemption. The Dalton court observed the dual jurisdiction dilemma articulated in Collins v. Heritage Wine. Id.

Finally, in the recent case of Buckner v. United Parcel Service, Inc., 2012 WL 1596726 (E.D. N.C. 2012), decided May 7, 2012, the court held that the plaintiff therein remained exempt under the Motor Carrier Act exemption after the TCA, because "he regularly operated vehicles weighing at least 10,001 pounds throughout the course of his employment with UPS," which "plaintiff [did] not dispute." Id. at *5. Thus, 'the court [found] that UPS . . . presented uncontested evidence demonstrating that plaintiff's employment duties involve the operation of motor vehicles weighing at least 10,001

15

pounds,' and this he was subject to the MCA exemption. Id. Thus, the court granted summary judgment for the employer. Id. at *9.

Some courts have found in a clearly minority position that employees driving vehicles over and under 10,000 pounds in an employer's mixed fleet are entitled to overtime for those workweeks in which they operate both. Mayan v. Rydbom, 2009 U.S. Dist. LEXIS 90525 (E.D. Pa. 2009); Hernandez v. Alpine Logistics, 2011 WL 3800031 (W.D. N.Y. 2011). These cases are factually distinguishable from the instant matter. In Hernandez v. Alpine, the employer had 24 vehicles under 10,000 pounds, and only two vehicles over 10,000 pounds; clearly, as the court found, the drivers in question spent the majority of their time driving smaller vehicles. Relatedly, in Mayan, one-third of the vehicles were over 10,001 pounds, and two-thirds were 10,000 pounds or less. 2009 U.S. Dist. LEXIS, 90525, at *3. The Mayan court concluded that after the TCA, it must be determined when and how long [an employee working on vehicles in both weight categories] . . . performed duties qualifying him or her to be a covered employee." Id. at *32. While the Mayan court found that '[a]n employee working on a 10,001 pound vehicle two days a week and an 5000 pound vehicle the remaining days a week appears to satisfy [the] requirement [of qualifying for overtime]. Id. at *31. Avery subsequently held that:

> [i]n some situations where use of non commercial motor vehicle wholly predominates and the use of commercial motor vehicles is of very limited duration or extent, it may be appropriate to differentiate between employees or to apply the motor carrier exemption only for those periods of time when employees were operating commercial vehicles.

748 F.Supp.2d at 500 (emphasis added). Applying this minority standard, only those hours which Plaintiff spent working on non-commercial vehicles would be used in

16

calculating overtime, and if Plaintiff worked over 40 hours on non-commercial vehicles in any workweek, she would be entitled to overtime for those hours, but the hours she spent working on commercial vehicles could not be included in the calculation.

## CONCLUSION

As the Court of Appeals for the Seventh Circuit aptly explained, [d]ividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes. Collins v. Heritage Wine Cellars, Ltd., 589 F.3d 895, 901 (7th Cir. 2009).

Cited in Avery, 748 F.Supp.2d at 500. Clearly, the weight of evidence and the applicable case law establish that Eastern Armored is a motor carrier and Plaintiff is an exempt employee under the Motor Carrier's Exemption, and therefore she is not owed overtime. Because Plaintiff fails to state a viable claim, as a matter of law, Eastern Armored is entitled to judgment as a matter of law.

Respectfully submitted,

_____
Norman J. Peer, Esq.
Lomurro Davison Eastman and Munoz
Monmouth Executive Center
100 Willow Brook Road, Ste. 100
Freehold, New Jersey 07728
732.462.7170/732.462.8955 (Fax)

James J. Cusack, Esq.
Admitted Pro Hac Vice
James J. Cusack, P.A.
201 N. Franklin St., Ste. 2880
Tampa, Florida 33602
813.223-1276/813.226.0159 (Fax)
Attorneys for Defendant Eastern Armored Services, Inc.